## H. A. GREENWOOD V. B. F. INGERSOLL ET AL.

FILED MAY 22, 1901. NO. 9,391.

1. **Pleading**: SUFFICIENCY OF PETITION IN INTERVENTION: FRAUDU-
   LENT CHATTEL MORTGAGE. In a contest between a mortgagee and
   other creditors of the mortgagor, an answer to a petition of
   intervention was presented, alleging that the mortgagee and
   mortgagor were "fraudulently colluding and conspiring to-
   gether in the execution and filing of such chattel mortgages,
   for the purpose of hindering, delaying and defrauding these
   plaintiffs and other creditors in the collection of their just
   dues," and that the mortgages were given "without any exist-
   ing valid indebtedness to be secured thereby." *Held*, To state
   facts sufficient to constitute a defense to the petition of inter-
   vention.

2. **Evidence**: FINDING: VALID LIEN: INDEBTEDNESS BONA FIDE. Evi-
   dence examined, and *held* not to support a finding that the
   mortgage under which intervener claims did not create a valid
   lien and was not given in good faith, in due course of trade, for
   a *bona fide* indebtedness, and was fraudulent and void as to the
   other creditors of the mortgagor.

ERROR from the district court for Douglas county.
Tried below before KEYSOR, J. *Reversed.*

*A. D. McCandless*, for plaintiff in error.

*Covell & Winter, contra.*

HOLCOMB, J.

From the findings of the trial court, and a judgment
thereon adverse to him, the intervener, Greenwood, by
proceeding in error, seeks to secure a reversal in this
court of the judgment rendered against him. But two
questions are presented for consideration and determina-
tion. It is contended by plaintiff in error that the answer
of defendants in error to his petition of intervention
does not state facts sufficient to constitute a defense as to
the new matter alleged, and that the findings and judg-
ment of the trial court are not supported by the evidence
and are contrary thereto.

54

The contest is between creditors of one Bridenthal. The plaintiff in error claims under and by virtue of a chattel mortgage, and the defendants under proceedings in garnishment. The subject of the controversy is the proceeds of a car-load of fat hogs. The hogs were owned by the said Bridenthal, who had executed a mortgage on the same, with much other personal property, in favor of the intervener to secure the payment of $2,078.75 due, as claimed, from the mortgagor to the mortgagee. Shortly after the execution of the mortgage the hogs were shipped by Bridenthal, in his own name, to a commission firm at South Omaha for sale on the open market, with a letter of instructions to the commission merchants to whom they were consigned to send the proceeds to Greenwood, the intervener and mortgagee. At the time of the shipment transcripts were hurriedly secured of judgments obtained theretofore against Bridenthal in Gage county, and filed in Douglas county, executions issued which were returned unsatisfied, and the commission firm garnished as the debtors of Bridenthal. Upon answer, the firm was directed to pay the money they held, as the proceeds of the sale of the hogs, into court to await its further order. The intervener applied for and obtained leave to intervene and file a petition claiming the said money by reason of his chattel mortgage on the property. To this answers were filed, the different cases consolidated and a trial had as though there was but one action. The conclusion was favorable to the judgment creditors.

With respect to the contention that the answer states no affirmative defense, we are unable to agree. While there are a number of allegations which we regard as stating conclusions of fraud, rather than pleading the ultimate facts on which the alleged fraud is predicated, yet in the third paragraph of the answer it is averred that the chattel mortgage, under which the intervener claimed, as well as other mortgages in his favor, were given and received by the parties "fraudulently colluding and conspiring together in the execution and filing of

such chattel mortgages, for the purpose of hindering, delaying and defrauding these plaintiffs and other creditors in the collection of their just dues." And in the fourth paragraph it is declared that the said mortgage was given in fraud and collusion of the parties thereto and "without any existing, valid indebtedness to be secured thereby." The answer, reduced to its simplest terms, alleges, as we view it, that the mortgage pleaded by the intervener, as well as a number of other mortgages, was given and received for the purpose of hindering, delaying and defrauding the creditors of the mortgagor; was without any valid consideration, and executed in pursuance of a common design and intention on the part of the parties to the several instruments to cover up and incumber the property of the mortgagor, so as to place it beyond the reach of creditors. In this respect we regard the answer as stating facts sufficient to constitute a defense.

As to the second question, the trial court found, "that the said chattel mortgage, under and by virtue of which the said intervener, H. A. Greenwood, claims a lien upon the said sum of $560.56, was and is not a valid existing lien thereon, that it was not given in good faith, in due course of trade, for a *bona fide*, ascertained and existing indebtedness from the said J. W. Bridenthal and Ella S. Bridenthal to the said H. A. Greenwood, and that the same was and is void as to the plaintiffs herein and all creditors." The evidence discloses a series of transactions between the intervener and mortgagor, extending over a period of several years and involving the giving of a large number of notes, and mortgages on both chattels and real property to secure the payment of the same. The evidence is not at all contradictory or conflicting, and the only point with respect thereto is the proper deduction warranted thereby. The intervener was doubtless a *bona fide* creditor of the mortgagor, and the several mortgages secured an indebtedness actually existing, as is represented by the several instruments evidencing the

indebtedness introduced in evidence. Most of the indebtedness was for borrowed money. The original indebtedness is shown to be for a balance of over $500, for lumber and building material purchased by the mortgagor and used in the construction of a dwelling-house on his farm, which was constructed in 1885. This, with borrowed money procured from time to time, and accumulated interest, less a number of payments made at different times, had grown to the sum of $2,078.75 at the time of the transactions leading to the institution of the present suit. There can be no question of this sum being actually due the intervener by the mortgagor at the time the mortgage was executed, under which the proceeds of the mortgaged property is claimed. The parties, it appears, would have a settlement of their transactions at the close of each year and a new note and mortgage taken for the sum found to be due at the time of such settlement. Although the notes evidencing the prior indebtedness were surrendered when a settlement was had, it appears that the mortgagee, Greenwood, failed and neglected to release the mortgages of record, and that at the time of bringing this suit there were some twelve unreleased chattel mortgages, aggregating several hundred dollars, appearing on the records against Bridenthal and in favor of the intervener. The intervener explains the matter by saying that he was not in the habit of releasing the mortgages in his favor (he being a money loaner) until, in 1896, some 900 unreleased mortgages were of record after the debts they secured had been paid; that he was furnished a list of the same and requested by the clerk to release them; that he furnished the clerk with a power of attorney to release all that had been satisfied. At about the time of the execution of the mortgage under which the intervener claims, another mortgage on other personal property was also executed, as well as a real estate mortgage, subject to prior incumbrances. The prior real estate mortgages, however, incumbered the land for more than it was worth, and the

Greenwood v. Ingersoll.

chattel security would not be regarded as at all excessive. Aside from the continuous transactions and the mortgaging from time to time of practically all the property of the mortgagor, and the non-release of the mortgages when settlements were had and other mortgages given, we find nothing in the record to warrant the conclusion that the transaction in controversy was other than honest, in good faith, and for the purpose solely of protecting the mortgagee for a debt justly owing him. All of the different transactions were gone into in detail, and there is not the least indication appearing in the record of any one of them being for other purposes than securing an actual existing *bona fide* indebtedness; and, unless the inference is warranted from the uncontradicted evidence that, in addition to the object of securing a just debt, the parties also entertained a fraudulent design to hinder, delay and defraud other creditors, the mortgage must be upheld, and the conclusions reached by the trial court reversed. Most of the property in the prior mortgages had been disposed of, and that which was not was covered by the mortgage through which the intervener claims, and one other executed a day or two subsequent, securing the same debt. We are hardly justified in concluding that there was a design and object to defraud other creditors in permitting these prior mortgages to remain uncanceled, because the security mentioned therein was either disposed of or included in the subsequent mortgages. The neglect was doubtless carelessness on the part of the mortgagee, as stated by him, from which no one has been or could be prejudiced, save the mortgagor. There is nothing in the evidence warranting the conclusion that the mortgagee was acting otherwise than solely to obtain security for a debt justly due him, and the law should not deprive him of this protection when there exists no evidence of fraud or wrongful intent on his part. The mortgagor appears in an equally creditable light. He has been struggling along for several years under adverse circumstances. He appears to

be making an honest effort to keep his head above water and meet his just obligations. If a chattel mortgage in the present instance is not valid because of the acts of the parties in relation to the indebtedness secured, we can scarcely conceive of a case where chattel security may be confidently relied on or when the creditor would be justified in extending the time of payment of a secured debt and carrying the debtor to a more favorable time for him to satisfy the obligation.

In considering the subject we have not overlooked the view of the case that the intervener, claiming against other creditors under a chattel mortgage, the mortgagor being in possession, the instrument under which he claims is *prima facie* fraudulent as to such creditors, which presumption is to be overcome by proof by the mortgagee of the *bona fides* of the transaction. We think the mortgagee has fully met this requirement, and has satisfactorily shown by the evidence that no unfavorable inference, sufficient to avoid the instrument, may rightfully be drawn from their course of dealing as to any fraudulent intent in regard to the other creditors of the mortgagor, under the charges of fraud contained in the answer. The parties all reside in Gage county, where the controversy could, with less expense and more conveniently, be tried. The creditors, however, evidently regard it as more advantageous to them to begin the action in the manner stated in another county, distant from the homes of all parties in interest, and, from the evidence, before any execution had been issued against the debtor in the county in which he resided.

The evidence will not support a judgment against the intervener, whose right to the proceeds of the mortgaged property is based on a valid mortgage in his favor.

The judgment must be reversed, and the cause remanded.

REVERSED AND REMANDED.